**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LAURIE STERN,**

                              **Plaintiff,**

            **v.**                                          **1:05-CV-683**
                                                            **(FJS/GHL)**

**MICHAEL J. ASTRUE,[1] Commissioner of**
**Social Security,**

                              **Defendant.**
_____

**APPEARANCES**                         **OF COUNSEL**

**EMPIRE JUSTICE CENTER**               **LOUISE M. TARANTINO, ESQ.**
119 Washington Avenue, 2d Floor
Albany, New York 12210
Attorneys for Plaintiff

**OFFICE OF THE UNITED**                **WILLIAM H. PEASE, AUSA**
**STATES ATTORNEY**
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

        In October of 1980, February of 1984, and October of 1985, respectively, Plaintiff applied

for supplemental security income ("SSI"), alleging disability as of August, 1980.  *See*

_____

        [1] Plaintiff named Jo Anne B. Barnhart, the former Commissioner of Social Security, as
Defendant in this action.  On February 12, 2007, Michael J. Astrue took office as Social Security
Commissioner.  The Court, therefore, has substituted him as the named Defendant in this matter
pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.  No further action is required
to effectuate this change.  *See* 42 U.S.C. § 405(g).

Administrative Transcript ("Tr.") at 14, 35, 117.  Plaintiff appealed the denial of her October

1985 application and was awarded benefits based on that application.  *See id.* at 14, 117.  Since

Plaintiff was a member of the *Stieberger*[2] class action settlement, her previous applications were

reconsidered but denied.  *See id.* at 20-24, 59, 69.  Plaintiff timely requested a hearing before an

Administrative Law Judge ("ALJ") to consider the pre-1985 applications, which hearing was held

on April 23, 2002.  *See id.* at 84, 156-60, 161-82.  ALJ Stephan issued an unfavorable decision

on May 20, 2002.  *See id.* at 11-19.  This decision became the final decision of the Commissioner

when the Appeals Council denied review on April 4, 2005.  *See id.* at 3-6.  This action followed.

## II. BACKGROUND

**A.     Personal history**

Plaintiff was forty-one years old at the time of the administrative hearing in 2002.  *See* Tr.

at 35.  She took special education classes and completed high school.  *See id.* at 32.  Plaintiff

alleges disability due to cerebral palsy, a club foot, and a seizure disorder.  *See id.* at 81, 102,

169.  She has had some work experience at sheltered workshop settings in the Menands

Workshop and the Cerebral Palsy Center, but her earnings have not risen above the substantial

gainful activity level.  *See id.* at 14, 27, 169-71.

**B.     Medical evidence in the record**

***1. Medical evidence before the ALJ***

As Plaintiff points out, the bulk of the medical evidence in the record covers treatment

---

[2] *See Stieberger v. Sullivan*, 792 F. Supp. 1376 (S.D.N.Y. 1992).

that occurred after the relevant time period of October 1980 through September 1985.  *See* Plaintiff's Brief, Dkt. No. 9, at 4.  It appears that the Social Security Administration was unable to locate Plaintiff's original file and as much medical evidence as possible has been compiled in its absence.  Nevertheless, the evidence in the transcript sheds light on Plaintiff's impairments as they existed during the relevant time frame.

A diagnosis of cerebral palsy and seizure disorder is repeated throughout the record.  *See id.* at 73-75, 78, 102, 104, 106-07, 122.  On July 30, 1986, a report from Albany Medical College Department of Neurology indicated that Plaintiff presented with a long-term seizure disorder, including loss of consciousness and tonic clonic convulsions.  *See* Tr. at 103-04.  Her last "big seizure" was noted to have occurred two to three years prior to the examination, which would place it around 1983 or 1984.  *See id.* at 103.  Under developmental history, the report noted that Plaintiff suffered from cerebral palsy, a condition which has its onset at birth, affecting her left arm and right leg.  *See id.* at 104.

In an August 11, 1986 letter, Dr. Venkat Ramani, a neurologist, noted that Plaintiff had suffered from cerebral palsy since birth.  *See id.* at 102.  He also noted that her last serious seizure had been about three years prior.  *See id.*  Dr. Ramani noted abnormalities on an EEG taken August 5, 1986.  *See id.*  He stated that Plaintiff's seizure disorder had existed since Plaintiff was fifteen years old.  *See id.*

Records from the Cerebral Palsy Center dated July 30, 1992, indicate that Plaintiff suffered from right spastic hemiplegia, or total or partial paralysis of one side of the body that results from disease of or injury to the motor centers of the brain.  *See id.* at 121.  A treatment note dated March 22, 1994, indicates that Plaintiff's developmental disability had existed since

birth and that she had a history of surgeries on her right foot as well as seizure disorder. *See id.* at 122. Physical examination showed right leg stiffness and clubbing, partial left arm paresis, and decreased function in the left arm and right leg. *See id.* at 124. An April 5, 2000 treatment note from Dr. Matthew Murnane at the Albany Medical College indicated that Plaintiff required use of a wheelchair, had dysarthric speech (difficulty with speech due to central nervous system dysfunction), spasticity worse on her left side as compared to the right, and mild asymmetric left-sided weakness. *See id.* at 75. A treatment note from Center Health Care dated December 19, 2000, noted a diagnosis of cerebral palsy with right hemiparesis, seizure disorder, and hearing loss. *See id.* at 78.

Plaintiff's treating physician for thirty years, Dr. Brian Quinn, noted on April 9, 2002, that Plaintiff suffered from cerebral palsy with right hemiparesis and was born with a right club foot. *See id.* at 127. He further noted that Plaintiff had limited use of her left arm, had had numerous surgical procedures on the right foot, and had always needed an assistive device to ambulate. *See id.* Dr. Quinn stated that he had reviewed Listing 11.07D[3] and opined that Plaintiff's impairment had met the definition of that listing since birth. *See id.*

### 2. Additional evidence before the Appeals Council

Additional medical evidence was submitted to the Appeals Council following the ALJ's decision. *See id.* at 133-54. This evidence consisted of reports from Dr. Quinn and Plaintiff's pediatrician, Dr. Constance Glasgow. In reports submitted February 12, 2002, and May 7, 2002, Dr. Quinn confirmed that he had treated Plaintiff since childhood and stated that the primary

---

[3] 20 C.F.R. Part 404, Subpart P, Appendix 1, § 11.07D.

diagnoses were cerebral palsy with left hemiplegia and a right club foot. *See id.* at 137. He noted that Plaintiff's seizure disorder was well-controlled with medication. *See id.* Also included in the additional evidence was an October 18, 1966 letter from Dr. Quinn in which he stated that he was treating Plaintiff, five years old at the time, for a severe right club foot as well as a left upper extremity problem and suspected cerebral palsy. *See id.* at 153.

Dr. Constance Glasgow, Plaintiff's treating pediatrician from 1969-1980, reported on July 11, 2003, that Plaintiff suffered from a club foot for which she wore a brace, seizure disorder, and left upper extremity congenital weakness for which no treatment was available. *See id.* at 146. Dr. Glasgow stated that Plaintiff suffered from cerebral palsy with right hemiparesis and a club foot, which caused a gait disturbance for which a right leg brace was required. *See id.* at 139. Dr. Glasgow reviewed Listing 11.07D, Cerebral Palsy, and opined that Plaintiff's impairment had met the description of this listing since birth. *See id.*

## III. DISCUSSION

### A.    Disability determination

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work. . . .

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 404.1520 and

416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental
> ability to do basic work activities.  If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in
> Appendix 1 of the regulations.  If the claimant has such an
> impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and
> work experience . . . .  Assuming the claimant does not have a
> listed impairment, the fourth inquiry is whether, despite the
> claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is
> unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could
> perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. § 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps.  However, if

the plaintiff establishes that his impairment prevents him from performing his past work, the

burden then shifts to the Commissioner to prove the final step.  *See id.*

**B.     Scope of review**

In reviewing the Commissioner's final decision, a court must determine whether the

Commissioner applied the correct legal standards and whether there is substantial evidence in the record as a whole to support the decision. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)) (other citations omitted). A reviewing court, however, may not affirm an ALJ's decision if it reasonably doubts that the ALJ applied the proper legal standards even if it appears that there is substantial evidence in the record to support that decision. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports his decision. *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citation omitted). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. *See* 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991) (citation omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quotation omitted). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Id.* (citations omitted). "However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision." *Lewis v. Comm'r of Soc. Sec.*, No. 6:00 CV 1225, 2005 WL

1899399, *1 (N.D.N.Y. Aug. 2, 2005) (citations omitted).

In the present case, the ALJ found that (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date of the disability; (2) Plaintiff suffered from cerebral palsy and seizure disorder, impairments considered severe under the regulations, neither of which met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (3) Plaintiff had no past relevant work experience; (4) Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with limited use of the non-dominant upper extremity, which work existed in significant numbers in the national economy; and (5), according to Medical-Vocational Rule 201.21, Plaintiff was not disabled during the time period in question. *See* Tr. at 18.

Plaintiff contends that (1) the ALJ erred in failing to consider her treating physicians' opinions when coming to his conclusion that her impairments did not meet or equal Listing 11.07D, Cerebral Palsy; (2) the ALJ failed properly to apply the *Stieberger* presumption; and (3) the ALJ's RFC assessment was erroneous.

### 1. Treating Physician Rule; Listing 11.07D

Plaintiff argues that the ALJ erred in failing to consider her treating physicians' opinions when coming to his conclusion that her impairments did not meet or equal Listing 11.07D, Cerebral Palsy.  *See* Plaintiff's Brief at 13-16.  Listing 11.07D states "11.07 *Cerebral palsy*. With: . . . D. Disorganization of motor function as described in 11.04B."  20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.07.  Section 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross

and dexterous movements, or gait and station (see 11.00C)."[4]  20 C.F.R. Part 404, Subpart P, Appendix 1 § 1104B.

The record reflects that treating physician Dr. Quinn and treating pediatrician Dr. Glasgow both had the opportunity to review the content of Listing 11.07D.  *See* Tr. at 127, 146. Dr. Quinn treated Plaintiff for more than thirty years and continued to treat Plaintiff until the date of the hearing decision.  *See id.* at 70-72, 127, 136.  Dr. Glasgow was Plaintiff's treating pediatrician from 1969 through 1980.  *See id.* at 146.  Both physicians confirmed that Plaintiff had suffered from cerebral palsy since birth and had suffered from a seizure disorder since approximately 1974, when Plaintiff was fifteen years of age.  *See id.* at 127, 136, 146.

The case law as well as the regulations provide that, although a treating physician's opinion is not binding on the Commissioner, the Commissioner must give that opinion controlling weight when it is well supported by medical findings and not inconsistent with other substantial evidence.  *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (citations omitted); 20 C.F.R. § 416.927(d).  On the other hand, if other substantial evidence in the record contradicts the treating physician's opinion, the ALJ is not required to give that opinion

----

[4] Section 11.00C states as follows:

> *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment.  The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 11.00C.

controlling weight, *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citations omitted); however he "'cannot arbitrarily substitute his own judgment for competent medical opinion[,]'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quotation and other citations omitted).

If he decides not to give controlling weight to the treating physician's opinion, the ALJ must assess the following factors: the length of the treatment relationship, the frequency of examination for the condition in question, the medical evidence supporting the opinion, the consistency of the opinion with the record as a whole, the qualifications of the treating physician, and other factors tending to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(d)(2)-(d)(6); 416.927(d)(2)-(d)(6).

In this case, the ALJ discounted Dr. Quinn's opinion because of the "scant medical findings during the time period in question." *See* Tr. at 16. Additionally, the ALJ noted that, in the most recent treatment notes from 2002, Dr. Quinn stated that he was unable to recall the particulars of her case. *See id.*; *see id.* at 70-72. Although the record does document that Plaintiff's seizure activity is well-controlled with medication, there is evidence that during the period in question – from October 1980 through September 1985 – Plaintiff suffered at least one major seizure. *See id.* at 102-03. The medical evidence further demonstrates that Plaintiff was consistently diagnosed with cerebral palsy, a condition which has an onset at birth. *See id.* at 73-75, 78, 102, 104, 106-07, 122. Moreover, there is no significant evidence in the record that contradicts Drs. Quinn's and Glasgow's affirmations that, due to her cerebral palsy, Plaintiff had suffered difficulty ambulating throughout her treatment history, a disturbance in gait which required an assistive device to ambulate, and right hemiparesis. In fact, the medical record from treatment providers other than Drs. Quinn and Glasgow affirmatively supports these assessments.

*See id.* at 75-78, 121.

The ALJ's reasons for discounting Dr. Quinn's opinion were inadequate.  The ALJ cited

only one medical opinion relevant to Listing 11.07D – that of Patricia Lawson, a nurse

practitioner, who noted on March 22, 1994, that Plaintiff's left leg was stiff but her gait was

steady.  *See id.* at 16.  Even if this single opinion were enough to overcome the medical opinions

of two treating sources, Ms. Lawson was a nurse practitioner and, therefore, not an acceptable

medical source under the regulations.  *See* 20 C.F.R. § 404.1513, 416.913(a).  Moreover, the fact

that Dr. Quinn could not immediately recall the particulars of Plaintiff's case does not indicate

that, upon consultation of his treatment record, he was unable to offer a competent opinion about

her medical impairments.  The ALJ failed to discuss the length of Dr. Quinn's treating

relationship with Plaintiff and failed properly to assess the evidence supporting Dr. Quinn's

opinion.  In so doing, the ALJ improperly substituted his own judgment for that of competent

medical opinion.  This conclusion is strengthened by Dr. Glasgow's opinion, submitted to the

Appeals Council, which provided further support from a longtime treating source that Plaintiff

suffered from cerebral palsy so as to meet the criteria of Listing 11.07D.  The ALJ should have

given controlling weight to Plaintiff's treating source opinions, which indicated that her medical

impairments met the requirements of Listing 11.07D since birth.  This would include the time

period in question – October 1980 through September 1985.

Accordingly, the Court finds that Plaintiff's impairment meets Listing 11.07D.  Under the

circumstances, which include persuasive proof of disability in the record as well as a long delay

in this case, a remand for further consideration would serve no purpose.  *See Carroll v. Sec. of*

*Health & Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).  Therefore, the Court reverses the

Commissioner's decision and remands the matter to the Commissioner for calculation of benefits for the relevant time period.  *See id.*[5]

## IV. CONCLUSION

After carefully reviewing the entire record in this case, the parties' submissions, and the applicable law, and for the reasons stated herein, the Court hereby

ORDERS that the decision denying disability benefits is **REVERSED** and the case is **REMANDED** for calculation of benefits due to Plaintiff; and the Court further

ORDERS that the Clerk of the Court shall enter judgment in Plaintiff's favor and close this case.

IT IS SO ORDERED.

Dated: May 14, 2008
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[5] In light of this conclusion, the Court need not consider Plaintiff's other arguments.